**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SANDRA L. FISCHER | : | CIVIL ACTION NO. 1:04-CV-2756 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| CYNTHIA TRANSUE, SUSAN BELL, | : | |
| MARK SCHAU, MARY E. MCDANIEL, | : | |
| and JOSEPH WOLINSKY, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

This is a civil rights action filed by Sandra L. Fischer ("Fischer"), an

employee of the Pennsylvania State Police ("State Police"). Fischer alleges that

four State Police employees[1] retaliated against her for exercising her First

Amendment right to speak out on matters of public concern and violated her right

to privacy pursuant to the Fourth Amendment. Presently before the court are

defendants' motions for summary judgment (Docs. 32, 33, 34, 35), in which

defendants contend that Fischer has failed to proffer sufficient evidence to support

her claims and that defendants' actions are shielded by qualified immunity. For the

reasons that follow, the motions will be granted.

---

[1] The remaining defendants are Captain Susan Bell, Lieutenant Mark Schau, Assistant General Counsel Mary E. McDaniel, and Sergeant Joseph Wolinsky. All claims against Cynthia Transue were voluntarily dismissed. (See Docs. 69, 70.)

I.      **Statement of Facts**[2]

Fischer became a State Police trooper in 1981. (Doc. 73-3 at 11.) In January of 1999, she voluntarily transferred to the Mercer crime unit under the supervision of defendant Sergeant Joseph Wolinsky ("Wolinsky"). (Doc. 56 ¶ 14; Doc. 73 ¶ 14.) Several retaliatory incidents allegedly ensued, and they are outlined below.

A.      **Fischer's Alleged Mistreatment and Resultant Complaints**

Fischer testified that when she applied for the position, Wolinsky stated that he preferred to hire a male trooper and asked that Fischer's application be declined. (Doc. 73-3 at 27-28.) After her transfer, Fischer began to notice that Wolinsky treated her differently than he treated the male members of the crime unit. For example, Fischer was subjected to regular inquiries from Wolinsky about her purpose for leaving the police station and was not kept abreast of case developments or training opportunities. (Id. at 34, 136-40.) Wolinsky also allegedly made offensive comments about Fischer, including referring to her as "goddamn

_____

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Fischer, the non-moving party. See infra Part II. Constructing the facts was rendered more difficult by Fischer's denials of several facts on the ground that the facts refer to certain individuals' "state of mind." (See, e.g., Doc. 73 ¶¶ 6, 15-16, 22-23, 26; 75 ¶ 12.) While this may be an appropriate response to allegations in a pleading, see FED. R. CIV. P. 8(b), it is insufficient to sustain an objection to factual assertions drawn from competent evidence of record, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). The court has conducted an independent review of the record, but where no evidence supports Fischer's position, the court has accepted defendants' statement as true. See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also infra Part II.

stupid" and "a fat pig in uniform."  (Id. at 57-58, 81.) In addition, every officer that subsequently transferred into the Mercer crime unit was male.  (Id. at 61.)

As supervisor of the Mercer crime unit, Wolinsky was responsible for compiling monthly arrest statistics for all of the officers in the unit.  Fischer alleges that, in the last several months of 2002, Wolinsky credited her with fewer arrests than she actually effectuated.  (Doc. 56 ¶¶ 1-2; Doc. 73 ¶¶ 1-2.)  Wolinsky testified that this discrepancy was attributable to his standard reporting procedures. Wolinsky explained that he does not include an arrest in monthly statistics until he receives a written report from the arresting officer.  (Doc. 56 ¶¶ 3-4, 8; Doc. 73 ¶¶ 3-4, 8.)

In December of 2002, supervisors in the Mercer patrol unit allegedly announced during a meeting that Fischer was responsible for every arrest that the crime unit had made in the previous three-month period and that without Fischer "there would be no crime unit."  (Doc. 56 ¶ 11; Doc. 73 ¶ 11.)  These remarks allegedly caused Wolinsky to become "very upset" with Fischer despite the fact that she "had absolutely nothing to do with encouraging, informing, or delivering the patrol supervisors['] remarks."  (Doc. 56 ¶ 12; Doc. 73 ¶ 12.)

In May of 2003, Fischer verbally complained to defendant Lieutenant Mark Schau ("Schau") about Wolinsky's reporting of her arrest statistics.  (Doc. 56 ¶ 10; Doc. 73 ¶ 10.)  After Fischer's complaint to Schau, she alleges that she began to receive an increased number of correction notices regarding arrest reports that she

3

submitted to Wolinsky.[3]  (Doc. 56 ¶ 13; Doc. 73 ¶ 13.)  Wolinsky testified that he had

been dissatisfied with the quality of Fischer's reports since she began working in

the Mercer crime unit and that he had called various deficiencies to Fischer's

attention.  (Doc. 56 ¶¶ 15-17; Doc. 73 ¶¶ 15-17.)  Wolinsky also testified that he

reviewed Fischer's reports in the same manner and with the same expectations that

he applied to the reports of all of the troopers he supervised and that he would have

issued the correction notices even if Fischer had not complained to Schau.  (Doc. 56

¶¶ 22-23; Doc. 73 ¶¶ 22-23.)  On September 19, 2003, Wolinsky conducted Fischer's

semi-annual progress review and noted that there were continuing problems with

her reports.  (Doc. 56 ¶¶ 28-29; Doc. 73 ¶¶ 28-29.)

On October 14, 2003, Fischer filed an internal Equal Employment

Opportunity ("EEO") complaint about Wolinsky.  (Doc. 49 ¶ 1; Doc. 75 ¶ 1.)  Before

filing the complaint, Fischer informed her commanding officer, defendant Captain

Susan Bell ("Bell"), of her intent to do so.  (Doc. 59 ¶ 12; Doc. 74 ¶ 12.)  Fischer

alleges that Bell "became extremely upset and began raising a litany of issues

implying that [Fischer] had acted improperly in the past, even accusing her of

touching the Butler County [District Attorney] on the behind while making an

inappropriate comment."  (Doc. 59 ¶ 13; Doc. 74 ¶ 13.)  Fischer alleges that Bell's

comments about the incident with the Butler County District Attorney were

---

[3]  Wolinsky issued correction notices to Fischer on February 19, 2003, March
17, 2003, June 2, 3003, September 5, 2003, September 6, 2003, September 19, 2003,
October 23, 2003, October 27, 2003, and December 4, 2003. (Doc. 56 ¶¶ 24-25, 27, 30;
Doc. 73 ¶¶ 24-25, 27, 30.)  On October 23, 2003, a non-defendant police officer issued
a correction notice to Fischer.  (Doc. 56 ¶ 31; Doc. 73 ¶ 31.)

"incorrect and unfounded."  (Doc. 59 ¶ 14; Doc. 74 ¶ 14.)  After filing the complaint,

Fischer says the number of correction notices she received from Wolinsky

increased even more.  (Doc. 73-3 at 197.)  Wolinsky again denies any correlation

between Fischer's complaint and the number of correction notices he issued.

(Doc. 56 ¶ 26; Doc. 73 ¶ 26.)

>       **B.**       **Internal Investigations**

Subsequent to the filing of her EEO complaint, Fischer was named the

subject of three internal State Police investigations.  The first of these

investigations stemmed from Bell's allegation that, on October 2, 2003, Fischer

drove her State Police vehicle into wet cement.  Bell instituted the investigation on

November 5, 2003, after observing photographs of the incident and learning that

Fischer had not submitted any reports regarding it.[4]  (Doc. 59 ¶¶ 16-20; Doc. 74

¶¶ 16-20.)  Fischer initially received a three-day suspension for the incident.  The

suspension was reduced to one day after Fischer filed a union grievance.  (Doc. 59

¶¶ 26-27; Doc. 74 ¶¶ 26-27.)  Bell testified that her supervisor ordered her to conduct

the investigation and that Fischer's EEO complaint played no role in her decision to

investigate.  According to Bell, had she failed to investigate the wet cement

incident, it would have constituted insubordination.  (Doc. 59 ¶¶ 21-23; Doc. 74

¶¶ 21-23.)

---

[4] Fischer denies that she was required to complete any reports regarding the incident because no damage to the car resulted.  (Doc. 74 ¶¶ 18-20.)

The second investigation concerned Fischer's alleged failure to activate the major case team per State Police protocol in response to a homicide that occurred on November 10, 2003.[5]  (Doc. 59 ¶¶ 28-30; Doc. 74 ¶¶ 28-30.)  Bell initiated the investigation on November 12, 2003 after receiving a report of the incident from Lieutenant Thomas Hill.  (Doc. 59 ¶¶ 28, 31; Doc. 74 ¶¶ 28, 31.)  Fischer ultimately received a written reprimand.  (Doc. 59 ¶ 37; Doc. 74 ¶ 37.)  Bell testified that Fischer's EEO complaint played no role in her decision to initiate the investigation. Fischer concedes that Bell was obliged to complete an investigation of the incident because it involved a violation of State Police regulations but maintains that she was an improper subject of the investigation.  (Doc. 59 ¶¶ 32, 34-35; Doc. 74 ¶¶ 32, 34-35.)

The final investigation was prompted by a March 10, 2004 citizen complaint that questioned the propriety of Fischer's management of a criminal investigation and accused her of making negative comments about her fellow officers.  (Doc. 59 ¶¶ 39, 41-42; Doc. 74 ¶¶ 39, 41-42.)  Schau initiated an internal investigation regarding the complaint.  (Doc. 59 ¶¶ 40, 43; Doc. 74 ¶¶ 40, 43.)  Bell adjudicated the complaint in favor of Fischer.  (Doc. 59 ¶¶ 48-50; Doc. 59 ¶¶ 48-50.)

## C.   Independent Psychiatric Examination

On November 12, 2003, Schau referred Fischer to the State Police member assistance program because he believed that Fischer's mental state was negatively

---

[5]  Fischer denies that she was required to activate the major case team claiming that such responsibility rests only with officers with ranks of lieutenant or higher.  (Doc. 74 ¶¶ 29-30.)

affecting her work.[6]  Fischer met with a peer contact from the member assistance

program on the following day  (Doc. 59 ¶¶ 53-56; Doc. 74 ¶¶ 53-56.)  Schau testified

that Fischer continued to become emotionally distraught at work and that he

witnessed her crying on at least four occasions in January and February of 2004.[7]

(Doc. 59 ¶¶ 57-59; Doc. 74 ¶¶ 57-59.)  Schau submitted a memorandum regarding his

observations to Bell.  Two of Fischer's other supervisors submitted similar

memoranda.  Aside from these memoranda, Bell also received a series of

supervisor's notations highlighting deficiencies in Fischer's work performance.

Bell was also aware that Fischer had been reprimanded as a result of two internal

investigations and that she had filed an EEO complaint against Wolinsky that was

deemed unfounded.[8]  (Doc. 59 ¶¶ 60-62, 66; Doc. 74 ¶¶ 60-62, 66.)  Considering this

combination of circumstances and the previous failure of the member assistance

program to remedy the situation, Bell elected to refer Fischer for an independent

psychiatric evaluation ("IPE").  (Doc. 59 ¶ 67; Doc. 74 ¶ 67.)

---

[6] Fischer testified that her emotional distress was caused by Wolinsky's aforementioned treatment of her.  (Doc. 74 ¶ 53.)

[7] Fischer maintains that she cried on only one occasion.  (Doc. 74 ¶ 57.)

[8] Bell admits that she considered that Fischer had filed a purportedly unfounded EEO complaint when issuing the IPE referral, but maintains that she would have made the referral even in the absence of the EEO complaint.  (Doc. 59 ¶¶ 68-69.)

On April 16, 2004, Fischer was ordered by the State Police to attend an independent psychiatric evaluation ("IPE") to be conducted on April 22, 2004.[9] (Doc. 49 ¶ 2; Doc. 75 ¶ 2.)  During the IPE, Fischer advised the doctor that she wished to audiotape the session.  When the doctor refused, Fischer telephoned her attorney, who advised her that the doctor was required by law to permit her to have a witness present during the IPE.  The doctor again refused this request and terminated the session.  (Doc. 49 ¶¶ 3-6; Doc. 75 ¶¶ 3-6.)

On April 28, 2004, State Police Human Resources Director Linda Bonney issued a written request that State Police Chief Counsel Barbara Christie ("Christie") correspond with "J. Jarrett K. Whalen, 118 North Pitt Street, Mercer, Pennsylvania 16137, Trooper Fischer's attorney, regarding the Department's Fitness for Duty program and Trooper Fischer's requirement to submit to the IPE." (Doc. 49 ¶ 8; Doc. 75 ¶ 8.)  Christie assigned to defendant Mary E. McDaniel ("McDaniel") the task of drafting and sending the requested correspondence, which she did on April 29, 2004.[10]  (Doc. 49 ¶ 9; Doc. 75 ¶ 9.)  On May 6, 2004, Attorney Whalen faxed a response to McDaniel indicating that his office had never represented Fischer.  (Doc. 49 ¶ 10; Doc. 75 ¶ 10.)

Ultimately, Fischer's IPE was conducted on May 24, 2004.  She was deemed fit for duty.  (Doc. 49 ¶¶ 13-14; Doc. 75 ¶¶ 13-14.)

---

[9] Fischer admits that defendant Mary E. McDaniel played no role in the decision to order an evaluation.  (Doc. 49 ¶ 7; Doc. 75 ¶ 7.)

[10] When McDaniel drafted the letter, she was not aware that Fischer had filed an internal EEO complaint against Wolinsky.  (Doc. 49 ¶ 12; Doc. 75 ¶ 12.)

### D.   Procedural History

On December 20, 2004, Fischer filed the instant action.  (See Doc. 1.)  Fischer

claims that defendants' actions violated her First and Fourth Amendment rights

and constituted various torts pursuant to state law, including invasion of privacy,

false light misrepresentation, and civil conspiracy.  (Id. at 8.)[11]  Defendants filed the

instant motions for summary judgment, which have been fully briefed and are ripe

for disposition.

## II.   Standard of Review

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places

the burden on the non-moving party to come forth with "affirmative evidence,

---

[11]  The court notes that Fischer apparently attempts to raise a gender
discrimination claim against Wolinsky for the first time in her summary judgment
briefs.  (See Doc. 78 at 1-2 (describing Wolinsky's allegedly discriminatory actions)).
A party may not utilize a summary judgment motion as a vehicle to raise claims not
supported by the pleadings.  Tome v. Harley Davidson Motor Co., No. 1:CV-06-2155,
2007 WL 3125090, at *7 (M.D. Pa. Oct. 24, 2007) ("Claims not alleged in a complaint
may not be raised for the first time in opposition to a motion for summary
judgment.").  Any attempt to do so will result in the newly asserted claims being
deemed waived.  See Shingara v. Skiles, No. 1:04-CV-0621, 2007 WL 210800, at *3
n.5 (M.D. Pa. Jan. 24, 2007) (holding that claims raised in the first instance at the
summary judgment phase are waived); Protocol Elecs., Inc. v. Transolutions, Inc.,
No. Civ. 03-4162, 2005 WL 1106132, at *5 (D.N.J. Apr. 29, 2005) ("[I]t is
impermissible, without leave of court, to raise new claims for the first time on
summary judgment."); see also Krouse v. Amer. Sterilizer Co., 126 F.3d 494, 499 (3d
Cir. 1997).  Fischer's failure to raise a gender discrimination claim in her complaint
therefore results in a waiver of that claim, and the court will grant defendants'
motion for summary judgment with respect to that claim without further
consideration.

beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the

United States . . . by a person acting under color of state law."[12]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery. Certain officials, including police officers and other state actors performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  In Saucier, the Supreme Court explained the analytical process for determining when to apply the privilege of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider . . . this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?  This must be the initial inquiry . . . .  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

Saucier, 533 U.S. at 201.  Thus, the qualified immunity analysis requires a two-step inquiry.

---

[12]  Defendants apparently concede for purposes of the instant motions that they were acting "under color of state law" at all times relevant hereto.

First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right. If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was "clearly established." If the court concludes that the defendant's conduct did violate a clearly established constitutional or statutory right, then it must deny the defendant the protection afforded by qualified immunity.

Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006); cf. Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005) (discussing whether the constitutional violation is a separate inquiry or part of the qualified immunity analysis); Kaucher v. County of Bucks, 455 F.3d 418, 423 n.2 (3d Cir. 2006).

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

Proceeding under the above framework, the court will consider, first, whether Fischer has offered prima facie evidence to support her federal claims and, second, whether defendants enjoy qualified immunity on those claims for which Fischer has presented sufficient evidence.

A.     **First Amendment Retaliation**

The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006).  To state a prima facie claim of retaliation, the plaintiff must allege that:  (1) the activity in question is protected by the First Amendment, (2) the defendants responded with retaliation, and (3) the protected activity was a "substantial factor" in the alleged retaliation.  See Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006); see also Chambers v. Pennsylvania, Civ. A. No. 1:04-CV-0714, 2006 WL 3831377, at *7 (M.D. Pa. Dec. 28, 2006); Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).  A defendant can rebut a prima facie case of retaliation by showing that "the same adverse action would have taken place in the absence of the protected conduct." Chambers, 2006 WL 3831377, at *7; see also Baldassare, 250 F.3d at 194.  Whether the activity is protected is a question of law, while the remaining inquiries are questions of fact. Hill, 455 F.3d at 241.

1.     **Protected Activity**

A public employee's statement is a protected activity if: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Id. (quoting Garcetti, 126 S. Ct. at 1958).  In the matter *sub judice*, Fischer alleges that she spoke as citizen about a matter of public

13

concern by:  (1) verbally complaining about Wolinsky's conduct to Schau, and (2) filing an internal EEO complaint against Wolinsky.  Defendants concede that Fischer's internal EEO complaint was a protected activity, but dispute that Fischer's complaint to Schau was a matter of public concern.  (See Doc. 48 at 8; Doc. 55 at 14-16; Doc. 68 at 21-23.)

A public employee's speech involves a matter of public concern if "it can be fairly considered as relating to any matter of political, social or other concern to the community."  Hill, 455 F.3d at 243 n.25.  In determining if speech is a matter of public concern, the court must consider the "content, form, and context of a given statement, as revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 147-48 (1983).  Speech generally involves a matter of public concern if it "attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials."  Baldassare, 250 F.3d at 195.  In contrast, speech that "constitutes merely personal grievances" does not involve a matter of public concern.  Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003).

Considering the "content, form, and context"of Fischer's complaint to Schau, the court finds that Fischer was advancing her own personal interests, rather than the interests of the public, when she made the complaint.  See Connick, 461 U.S. at 147-48.  Fischer's concerns were so narrowly tailored to her particular employment situation that they cannot be matters of public concern.  Her complaint involved Wolinsky's allegedly erroneous reporting of *only* her arrest statistics.  Moreover, her complaint concerned a purely procedural issue that is of no import to the public at

large.  See Myers v. County of Somerset, 515 F. Supp. 2d 492, 502-03 (D.N.J. 2007)

(holding that an employee's statements regarding "threatening and intimidating"

conduct directed exclusively towards him did not address matters of public concern

because they "pertained solely to [the employee's] own employment situation"); see

also Muzslay v. City of Ocean City, 238 F. App'x 785, 789 (3d Cir. 2007) (affirming

district court's decision that statements regarding an abrogation of a particular

employee's authority involved that employee's "own personal employment

situation" and did not involve matters of public concern).  Accordingly, the court

finds that Fischer has failed to establish that her complaint to Schau constituted a

protected activity.[13]

## 2.  **Retaliatory Action**

To qualify as retaliatory, an employer's conduct must adversely affect an

employee's First Amendment rights.  Brennan, 350 F.3d at 419; see also Breiner v.

Litwhiler, 245 F. Supp. 2d 614, 632-33 (M.D. Pa. 2003) (holding that conduct must be

sufficient "to deter a person of ordinary firmness from engaging in the First

---

[13]  The only protected activity in which Fischer engaged occurred on October 14, 2003; therefore, the court finds that any allegedly adverse actions that took place prior to October 14, 2003 cannot support Fischer's retaliation claim.  See infra Parts III.A.2-3.  These include, *inter alia*,: (1) Wolinsky's allegedly differential treatment of Fischer following her transfer to the Mercer crime unit, (2) the discrepancies in Fischer's arrest statistics, (3) Wolinsky's response to the positive comments Fischer received during a December 2002 meeting, (4) Schau's purported failure to respond to Fischer's complaints about Wolinsky, and (5) the increase in report correction notices that Fischer received following her complaint to Schau.  The court will grant defendants' motions for summary judgment with respect to those portions of Fischer's First Amendment retaliation claim that rely upon these actions without further discussion.

Amendment-protected activity" in order to qualify as retaliatory).[14] Determining

whether a plaintiff's First Amendment rights were adversely affected is a "fact

intensive inquiry focusing on the status of the speaker, the relationship between the

speaker and the retaliator, and the nature of the retaliatory acts." Brennan, 350

F.3d at 419.  Retaliatory acts must be "more than *de minimis* or trivial" to have an

adverse effect on an employee's First Amendment rights.  Id.; see also McKee v.

Hart, 436 F.3d 165, 170 (3d Cir. 2006).  Decisions relating to "promotion, transfer,

recall and hiring" are significant enough to qualify as retaliatory, while "criticism,

false accusations, or verbal reprimands" are not.  Brennan, 350 F.3d at 419.

In the instant case, Fischer alleges that the following acts by defendants were

retaliatory:  (1) Bell's verbal accusations that Fischer engaged in improper

behavior, (2) Bell and Schau's initiation of three internal investigations against

Fischer, (3) Bell and Schau's roles in Fischer's referral for an independent

psychiatric evaluation, (4) McDaniel's mailing of a letter to Attorney Whalen, and

---

[14]  In 2006, the Supreme Court modified the definition of retaliatory actions in claims asserted pursuant to Title VII.  See Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006).  The new standard announced by the Court requires a Title VII plaintiff to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 2415.  While it remains unclear whether the Court intended this new standard to apply with equal force to First Amendment retaliation claims, Third Circuit jurisprudence makes this a distinction without a difference.  See Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (discussing the Third Circuit's person of ordinary firmness standard).  See generally John Sanchez, *The Law of Retaliation After Burlington Northern and Garcetti*, 30 Am. J. Trial Advoc. 539, 565-66 (2007) (stating that the Burlington standard is "strikingly similar if not identical" to the Third Circuit's person of ordinary firmness standard).

(5) Wolinsky's issuance of three report correction notices to Fischer following her EEO complaint.  Defendants apparently concede for purposes of the instant analysis that the internal investigations and independent psychiatric evaluation constitute adverse actions.  (See Doc. 68 at 23-24.)  The court will address the remaining purportedly adverse actions *seriatim*.

Turning to Bell's verbal statements, the court finds that these statements are too trivial to constitute retaliatory action.  See Brennan, 350 F.3d at 419 (stating that "criticism, false accusations, [and] verbal reprimands" do not rise to the level of actionability under the First Amendment); see also McKee, 436 F.3d 165, 170 (3d Cir. 2006) (holding that "not every critical comment—or series of comments—made by an employer to an employee" provides a basis for a First Amendment violation).  At most, these statements amount to false accusations, which are insufficient to support a cause of action under the First Amendment.  Brennan, 350 F.3d at 419.  Even if the statements were construed as direct or veiled threats against Fischer, this court has repeatedly held that mere verbal threats do not qualify as retaliatory actions.  See Alexander v. Forr, No. 04-370, 2006 WL 2796412, at *4 (M.D. Pa. Sept. 27, 2006) ("Verbal abuse or threats do not constitute the type of adverse action sufficient to support a retaliation claim."); Bartelli v. Lewis, No. 04-0908, 2005 WL 2406048, at *2 (M.D. Pa. Sept. 29, 2005) ("[W]e determine that verbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim."); Bartelli v. Bleich, No. 04-0899, 2005 WL 2347235, at *3 (M.D. Pa. Sept. 26, 2005) ("[M]ere verbal threats cannot be viewed as an 'adverse action'

sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."); <u>see also</u> <u>Reid v. Wakefield</u>, No. 06-249, 2007 WL 954179, at *4 (W.D. Pa. Mar. 28, 2007) ("Verbal threats, whether acted upon or not, simply will not be sufficient to state a First Amendment claim."); <u>Gay v. City of Phila.</u>, No. 03-5358, 2005 WL 1844407, at *5 (E.D. Pa. Aug. 2, 2005) ("[I]t is well-established that verbal abuse or threats alone do not state a constitutional claim."). Accordingly, the verbal statements directed toward Fischer by Bell are insufficient to give rise to a retaliation claim.

Turning to McDaniel's letter to Attorney Whalen, the court finds that it is patently insufficient to rise to the level of an adverse action. Acting under the direction of her immediate superior, McDaniel drafted the letter to an individual whom she believed to be Fischer's attorney with the intent of resolving legal issues relating to Fischer's independent psychiatric evaluation. Fischer has proffered no evidence to suggest that McDaniel should have known that Attorney Whalen did not represent Fischer or that McDaniel intended to harm Fischer in any way by sending the letter. In fact, the evidence of record suggests that McDaniel's letter was intended to benefit Fischer by averting the disciplinary sanctions that would result from Fischer's refusal to submit to the psychiatric evaluation. McDaniel's misapprehension of the identity of Fischer's counsel was inadvertent and would not deter a person of ordinary firmness from engaging in First Amendment activity. As the letter is the only purportedly adverse action involving McDaniel, Fischer has

failed to establish a prima facie case of retaliation against McDaniel, and the court will grant the motion for summary judgment with respect to this claim.[15]

Finally, the court will consider Wolinsky's issuance of report correction notices to Fischer.  Wolinsky testified that the correction notices are procedural tools meant to assist officers in correcting deficiencies with their reports.  He further testified that he reviewed Fischer's reports with the same expectations that he applied to the reports of all his subordinates.  Fischer has offered no evidence to contravene this testimony.  Fischer has not suggested that her reports did not contain the errors highlighted in the correction notices.  Nor has Fischer offered the correction notices into evidence to establish that they were unduly critical of her work product.  Absent any contrary evidence, the court must accept Wolinsky's testimony and find that the correction notices were the type of constructive criticism that would not deter a person of ordinary firmness from engaging in First Amendment activity.  See Brennan, 350 F.3d at 419.  As the correction notices are the only remaining adverse action involving Wolinksy, Fischer has failed to establish a prima facie case of retaliation against him, and the court will grant his motion for summary judgment with respect to this claim.

_____

[15] Assuming *arguendo* that the letter was an adverse action, Fischer's retaliation claim against McDaniel would fail for lack of evidence of causation.  The record is devoid of evidence that McDaniel knew that Fischer had engaged in protected activity when McDaniel drafted the letter to Attorney Whalen.  See supra note 10.  Absent evidence of such knowledge, Fisher's claim against McDaniel cannot proceed.  See Moore v. City of Phila., 461 F.3d 331, 351 (3d Cir. 2006) (stating that to establish causation, a plaintiff must prove that "the decision maker had knowledge of the protected activity").

### 3.   **Substantial Factor**

To establish the causation element of a retaliation claim, a plaintiff must prove that the exercise of his or her First Amendment rights "played some substantial role" in motivating the retaliatory act.  Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D. Pa. Apr. 13, 2006).  However, a plaintiff need not prove that the retaliation was "motivated solely or even primarily by the protected activity."  Id.  If a plaintiff meets this burden, the defendant can rebut the claim of causation by showing that "the same adverse action would have taken place in the absence of the protected conduct."  Chambers, 2006 WL 3831377, at *7; see also Baldassare, 250 F.3d at 194.  The Third Circuit has recently highlighted the importance of a strict interpretation of the causation requirement as follows:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take.

Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007).

The temporal proximity of a retaliatory act to a plaintiff's exercise of his First Amendment rights is probative, but not dispositive, of the causation element of a retaliation claim.  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  As the Third Circuit has stated:

[I]t is causation, not temporal proximity itself, that is an element of plaintiff prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997); see also Marra v. Phila. Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). For temporal proximity alone to establish causation, the time difference must be so short as to be "unusually suggestive of retaliatory motive." Marasco, 318 F.3d at 512. While the Third Circuit has not explicitly defined the closeness in time required to be "unusually suggestive" of retaliatory motive, the court has held that a temporal proximity of two days was sufficient to establish causation on its own, see Farrell, 206 F.3d at 279 n. 5, while a temporal proximity of ten days was sufficient to establish causation only when accompanied by other evidence of wrongdoing on the part of the employer, Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003). Clearly, the court's analysis of temporal proximity must focus on the factual circumstances of the individual case. However, these cases suggest that the difference in time must be measured in days, rather than in weeks or months, to establish causation on its own. When such proximity is lacking, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct" or any other suggestions of causation that can be gleaned from the record "as a whole" may also give rise to an inference of causation. Farrell, 206 F.3d at 280 (quoting Kachmar,

109 F.3d at 177); see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir.

2003) (suggesting that "timing plus other evidence" may be an appropriate test for

causation).

In the instant case, Fischer's internal investigations and independent

psychiatric evaluation do not so closely follow a protected activity as to be unusually

suggestive of causation. Our sister courts have held that a temporal proximity of as

little as seventeen days was insufficient to establish causation. See Killen v. N.W.

Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007)

(holding that temporal proximity of seventeen days was insufficient to establish

causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity

of seven weeks would be insufficient to establish causation); Smith v. ABF Freight

Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (holding that

temporal proximity of one and one-half months was insufficient to establish

causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D. Pa.

Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to

establish causation). Here, the closest temporal proximity is the period of twenty-

two days that elapsed between Fischer's EEO complaint on October 14, 2003 and

the initiation of the first internal investigation against her on November 5, 2003.

This period of twenty-two days is too lengthy to give rise to an inference of

causation. Accordingly, the court must analyze the record "as a whole" for any

additional evidence that may give rise to an inference of causation with respect to

these retaliatory actions.

The court has conducted a thorough review of the record and has found no evidence that gives rise to an inference of causation in the instant case.  To the contrary, the record evidence suggests that the internal investigations were properly instituted in response to specific complaints and were a standard component of State Police procedure.  In fact, the type of complaints at issue mandated Bell and Schau to institute the investigations to ensure *their* compliance with State Police protocol.  Similarly, evidence of record suggests that Fischer's independent psychiatric evaluation referral was prompted not by her protected activity but by her emotional status in the weeks immediately preceding the referral.  Bell testified that she relied upon *several* submissions from Fischer's supervisors evidencing deficiencies in Fischer's work performance when she made the referral.  Given the unpredictable nature of her position and her overarching obligations to safeguard the public, Fischer's competence to perform the essential duties of her position, properly and without hindrance from her mental or emotional status, is of paramount importance.  The record evidence suggests that Schau and Bell acted out of a reasonable concern for Fischer's ability to perform her job and not out of retaliatory animus when making the referral for a psychiatric evaluation.  Perhaps the most telling evidence that an inference of causation has not been established in the instant case is that, in response to the motions for summary judgment, Fischer offers no legal argument regarding causation aside from mere temporal proximity.  (See Doc. 76 at 9-12 (relying *solely* upon temporal proximity to establish the causation element of the prima facie case)).  Accordingly,

the court finds that Fischer has failed to establish a prima facie case of retaliation, and defendants' motions for summary judgment will be granted with respect to this claim.

### B.    Fourth Amendment Right to Privacy

Fischer asserts that McDaniel's letter to Attorney Whalen constituted an invasion of her privacy in violation of the Fourth Amendment because it revealed information about her mental health without her authorization.  The Fourth Amendment bars "unreasonable searches and seizures," U.S. CONST. amend. IV, and "guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction."  Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 613-14 (1989).  To the extent that the Fourth Amendment prevents the disclosure of information regarding an individual's mental health, the court finds that no such disclosure occurred in the instant case.  The letter mentions only that Fischer had been ordered to participate in an independent psychiatric evaluation.  It does not reference the impetus for the evaluation or comment in any way on the status of Fischer's mental health.  (See Doc. 73, Ex. 7.)  As an employer could reasonably conduct a psychiatric evaluation of an employee even absent a specific concern regarding the employee's mental health, the court finds that the letter in no way reveals private information regarding Fischer's mental or emotional status.  Accordingly, the court will grant defendants' motion for summary judgment with respect to Fischer's Fourth Amendment claims.

24

**IV.**   **Conclusion**[16]

The only remaining claims are tort claims pursuant to state law.  However, the parties have not articulated specific reasons for the court to entertain these claims in the absence of a federal cause of action, and the court declines to do so. See 28 U.S.C. § 1367(c) ("The district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added).

For the foregoing reasons, the court will grant defendants' motions for summary judgment.  An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:   August 22, 2008

---

[16]  In light of the court's determination that Fischer has failed to offer *prima facie* evidence of her federal claims, the court need not address the subsequent issue of whether Fischer's rights were clearly established.  See supra Part III.A (discussing qualified immunity defense).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SANDRA L. FISCHER** | : | **CIVIL ACTION NO. 1:04-CV-2756** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CYNTHIA TRANSUE, SUSAN BELL,** | : | |
| **MARK SCHAU, MARY E. MCDANIEL,** | : | |
| **and JOSEPH WOLINSKY,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 22nd day of August, 2008, upon consideration of the motions

for summary judgment (Docs. 32, 33, 34, 35), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The motions for summary judgment (Docs. 32, 33, 34, 35) are
   GRANTED.  See FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of
   defendants and against plaintiff on all claims arising under federal law.

3. The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge